**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| TERRANCE McGAFFNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-cv-01474-TWP-TAB |
| | ) | |
| PATRICK R. DONAHOE, | ) | |
| Postmaster General, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Patrick R. Donahoe's ("Mr. Donahoe") Motion for Summary Judgment (Filing No. 36). Plaintiff Terrance McGaffney ("Mr. McGaffney") brought his claims of age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, 633a ("ADEA") against Mr. Donahoe in his official capacity as Postmaster General of the United States Postal Service ("USPS").

For the following reasons, Mr. Donahoe's Motion for Summary Judgment is **GRANTED**, and Mr. McGaffney's action is **DISMISSED**.

## I.    BACKGROUND

Mr. McGaffney was born in 1946 and began working for USPS in 1982 at the Kokomo, Indiana, Processing and Distribution Facility. Over his 30 years of service, Mr. McGaffney worked his way up the ladder at the Kokomo office. He was hired as a clerk and was then promoted to the position of accounting assistant supervisor, accounting supervisor and later became a maintenance supervisor. In 2002, Mr. McGaffney became the manager of maintenance (Filing No. 36-1 at 5). As the manager of maintenance, he was responsible for all outside contractors that came into the facility, and he supervised the maintenance supervisor to ensure that maintenance work was being

completed (Filing No. 36-1 at 6). As the maintenance manager, Mr. McGaffney reported to the plant manager, the highest official at the facility.

In August 2012, Brian LeSage ("Mr. LeSage") was assigned to be the acting plant manager at the Kokomo facility, and he became Mr. McGaffney's immediate supervisor. From the beginning their relationship was rocky. Mr. LeSage did not know Mr. McGaffney prior to this new assignment. However, about a week after beginning his assignment, Mr. LeSage was asked by Martin Hunnicutt, the out-going plant manager, to issue a warning letter to Mr. McGaffney based on allegations that Mr. McGaffney had been discovered using a petty cash fund to make purchases without prior approval and outside of USPS's authorized purchasing system (Filing No. 36-5 at 1). Mr. McGaffney admitted to this conduct and was issued a warning letter for failure to properly perform his duties. *Id.*

When Mr. LeSage went to Mr. McGaffney's office to deliver the warning letter, Mr. McGaffney's office door was locked, and there was no answer when he knocked on the door. Mr. LeSage unlocked the door with his key and entered the office. Mr. McGaffney was inside the office and seemed startled. He was sitting at his desk watching security videotape that directly showed a female support clerk sitting at her desk (Filing No. 41-4 at 5). Mr. LeSage found this peculiar and asked Mr. McGaffney why he was watching the footage, to which Mr. McGaffney responded that he was monitoring a register case on the employee's desk (Filing No. 41-4 at 5).

Mr. LeSage inspected Mr. McGaffney's office after Mr. McGaffney left for the day, finding additional images on the video monitor that indicated to Mr. LeSage that Mr. McGaffney had the security camera aimed at the female employee's desk and that he had been watching footage of Mr. LeSage speaking with the female employee at her desk earlier in the day (Filing No. 36-4 at 2). Prior to this incident, Mr. LeSage had been notified by other employees that Mr.

McGaffney might be stalking Maintenance Support Clerk Cynthia Cooney ("Ms. Cooney). (Filing No. 36-6).  Mr. LeSage also had information that Mr. McGaffney had manipulated Ms. Cooney's time sheet in USPS's time and attendance system to reflect time she did not work. *Id.* Based on these suspicions, Mr. McGaffney's unsatisfactory responses as to why he was viewing the video, and comments from other employees, Mr. LeSage placed Mr. McGaffney on emergency off-duty status without pay, pending a full investigation, effective August 31, 2012. *Id.* Mr. LeSage asked Mr. McGaffney to turn in his badge, keys, and Blackberry phone, and he escorted him from the building (Filing No. 36-1 at 8; Filing No. 36-8 at 1).

On September 6, 2012, Mr. McGaffney received written notice of his status and that same day requested an appointment with an equal employment opportunity ("EEO") counselor in accordance with regulations for federal agency employment discrimination. He then submitted an "Information for Pre-Complaint Counseling" on September 17, 2012, to USPS's EEO department, which was received on September 20, 2012. The Information challenged Mr. LeSage's decision to place him on off-duty status. Mr. McGaffney alleged discrimination based on his age because he had to pick one of the categories contained on the EEO form. (Filing No. 36-1 at 13).  Mr. McGaffney believed this was the case based on his feelings that because he was eligible to retire "they want to force me out." *Id.* In the Information, Mr. McGaffney requested being placed back in his position as maintenance manager in Kokomo. Mr. McGaffney, having never before filed an EEO complaint, was unfamiliar with the process. He was informed by an EEO investigator that, if he was unable to prove that a similarly situated employee was treated differently, then he would not be successful in his case. Mr. McGaffney believed that he would be unable to meet this standard, so he decided to withdraw his request for EEO counseling (Filing No. 36-1 at 14). On

September 30, 2012, Mr. McGaffney formally withdrew his request for EEO counseling, thereby
ending his pursuit of a claim based on the unpaid off-duty placement (Filing No. 36-9).

Mr. McGaffney was in off-duty status without pay for one week when David Riley ("Mr.
Riley"), lead manager of maintenance at the Indianapolis facility, offered to allow Mr. McGaffney
to work at the Indianapolis facility. Mr. McGaffney received a call from Mr. LeSage ordering him
to report to Robert Wells ("Mr. Wells") at the Indianapolis facility (Filing No. 36-1 at 8). Mr.
McGaffney was assigned to the Indianapolis facility for nine months, pending the outcome of his
investigation. While assigned to the Indianapolis facility, Mr. McGaffney retained his position
title, pay, and grade; however he had to travel approximately 100 miles round trip each day. He
supervised other employees and observed and reported on the machines in the facility. He also was
asked to complete periodic audits of the machinery throughout each day. On December 18, 2012,
Mr. McGaffney was assigned to do craft work for four days. Specifically, he was assigned the task
of hitting a machine with a hammer every time it stopped working. Subordinate employees made
fun of Mr. McGaffney, which made him feel humiliated. He was assigned this task through
December 21, 2012. When a union grievance and a complaint was submitted to human resources,
Mr. Riley removed him from performing this task noting that this reassignment work was not
commensurate with Mr. McGaffney's position description, skill level and seniority. However,
other managers had performed this task in the past to help keep operations going.

During Mr. McGaffney's assignment to the Indianapolis facility, Mr. Riley asked Shannon
Childers ("Mr. Childers"), postmaster of the Seymour, Indiana, post office, to assist in Mr.
McGaffney's investigation. Mr. Childers, who was trained and had extensive experience in
investigations, was asked to investigate the allegations against Mr. McGaffney regarding possible
sexual harassment, theft of postal time, and failure to follow instructions (Filing No. 36-11 at 5).

4

Mr. Childers spent about a month at the Kokomo facility where he interviewed approximately twenty-five employees (Filing No. 36-11 at 6). Based on the information gathered from employees and documents, Mr. Childers recommended that Mr. McGaffney be interviewed.

Because of Mr. Childers's recommendation, Mr. McGaffney was asked to return to the Kokomo facility for an investigative interview. Up to that point, he had not heard anything about the investigation for approximately four weeks. Mr. McGaffney contacted the National Association of Postal Service Supervisors ("NAPS") to request a representative, and Larry Massie ("Mr. Massie") filled that role. Mr. Massie accompanied Mr. McGaffney to the interview as his representative (Filing No. 36-1 at 14). The interview lasted approximately three hours and covered years of Mr. McGaffney's work (Filing No. 36-1 at 9). Following the interview, Mr. McGaffney returned to the Indianapolis facility to continue his assignment there. Mr. Massie was later contacted by Mr. LeSage, who asked whether Mr. McGaffney was eligible to retire and whether he would prefer to retire rather than go through the investigation (Filing No. 41-6 at 4). Mr. Massie talked with Mr. McGaffney about his preference and then informed Mr. LeSage that Mr. McGaffney was not interested in retiring. *Id.*

After the interview, Mr. Childers concluded his investigation and determined that Mr. McGaffney had engaged in theft of postal time and failure to follow instructions (Filing No. 36-11 at 8). Mr. Childers also determined that Mr. McGaffney failed to properly perform his duties when he ignored several annual reports showing major safety issues with a power distribution panel, electrical hot spots, and other problems that violated the National Electric Code and the Occupational Safety and Health Code. Mr. Childers also found that Mr. McGaffney had misrepresented facts regarding installing a new central vacuum system, which he had not even

begun to install. *Id.* Mr. McGaffney disputes some of Mr. Childers findings because he believes the "hot spot" deficiencies were not serious and thus not in violation of applicable electrical codes.

Mr. LeSage also initiated an investigation of Mr. McGaffney's computer system, which revealed numerous visits to non-work related websites throughout a five month period. The investigation revealed approximately 39,000 visits to non-work related websites. When asked about his computer activity, Mr. McGaffney admitted that he visited some of the websites but also explained that he had given his computer log-in information to another employee, which was against USPS policy.

On November 13, 2012, Mr. McGaffney initiated EEO pre-complaint counseling and then filed a complaint on or about December 28, 2012. The complaint alleged age discrimination and retaliation (Filing No. 25-1). Without knowledge of Mr. McGaffney's initiation of EEO pre-complaint counseling, on November 20, 2012, Mr. LeSage conducted another interview of Mr. McGaffney. Based on all of the facts gathered in the investigation, Mr. LeSage thought that Mr. McGaffney should be removed from employment. On or about November 29, 2012, Mr. LeSage requested authorization from USPS's labor relations department to issue a notice of proposed removal (Filing No. 36-13). On January 28, 2013, a notice of proposed removal for failure to maintain the operational safety of his assigned facility was issued for Mr. McGaffney (Filing No. 36-14).

Mr. Riley, as the deciding official, reviewed the notice of proposed removal. While reviewing the notice of proposed removal, Mr. Riley considered Mr. McGaffney's years of service and potential for rehabilitation and had discussions with Mr. McGaffney. After reviewing the evidence, Mr. Riley determined that the charges against Mr. McGaffney were supported and recommended termination (Filing No. 36-15). Despite this, in consideration of Mr. McGaffney's

31 years of USPS service and nearly two years of military service, Mr. Riley reduced the notice of proposed removal to a warning letter. *Id.* After utilizing the union grievance process for the reassignment to Indianapolis, Mr. McGaffney's relocation ended, and he returned to the Kokomo facility and resumed his position there with the same title, pay, and grade.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion

for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Mr. McGaffney, as the nonmoving party, and draws all reasonable inferences in his favor. *Bright v. CCA*, 2013 WL 6047505, at *3 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* (citation and quotation marks omitted).

## III.   DISCUSSION

Mr. Donahoe has moved for summary judgment on Mr. McGaffney's ADEA claims of discrimination and retaliation. In order to prevail at the summary judgment stage, Mr. Donahoe need only defeat one element of each claim. *See In re Inlow Accident Litig.*, 2001 U.S. Dist. LEXIS 2747, at *62 (S.D. Ind. Feb. 7, 2001). Mr. Donahoe asserts that summary judgment is appropriate because Mr. McGaffney cannot show he is entitled to any remedy available under the ADEA, and he did not suffer an adverse employment action.

### A.   Legal Principles Governing Employment Discrimination and Retaliation Claims

A plaintiff may show discrimination and retaliation by using either the direct method or the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] This standard applies to employment discrimination and retaliation claims brought under the ADEA. *See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012).

---

[1] The Seventh Circuit Court of Appeals has recommended abandoning the direct and indirect methodologies by "collaps[ing] all these tests into one," *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring), or by using "a simple analysis of whether a reasonable jury could infer prohibited discrimination and an adverse employment action based on that discrimination." *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014) (citation and quotation marks omitted). The Seventh Circuit explained, however, that "[w]hile this approach is being considered, the Court has continued to look at the factors embodied in the traditional tests to determine whether plaintiff has succeeded in creating a genuine issue of material fact." *Id.*

Under the direct method of proof, a plaintiff asserting a retaliation claim must show "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Id.* Furthermore, "[a]n employer must have actual knowledge of the employee's protected activity to state a claim for retaliation." *Id.* at 658.

For an age discrimination claim, under the direct method of proof, the plaintiff must put forward evidence that the employer's decision to terminate him had a discriminatory motivation. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006). A plaintiff may use either direct evidence, such as an admission of discrimination, or circumstantial evidence. *Id.* When presenting circumstantial evidence, the evidence will be sufficient if it constructs a "convincing mosaic" that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citation and quotation marks omitted). The "circumstantial evidence must point directly to a discriminatory reason" for the employer's action. *Ptasznik*, 464 F.3d at 695.

Alternatively, under the indirect method of proof, the plaintiff has the initial burden of establishing a *prima facie* case that the adverse employment action was impermissibly discriminatory. *Id.* at 696. If the plaintiff satisfies this burden, then the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to submit evidence that the employer's stated reason is pretextual. *Id.*

The plaintiff establishes a *prima facie* case of discrimination by presenting evidence that would allow a reasonable jury to find that (1) he is a member of a protected class; (2) he performed reasonably on the job in accordance with his employer's legitimate expectations; (3) despite his

9

reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably by the employer. *Id.*

To establish a *prima facie* case of retaliation, the plaintiff must show that (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

**B.    Mr. McGaffney's Discrimination and Retaliation Claims**

Mr. McGaffney filed this case against Mr. Donahoe because his supervisor at USPS placed him on emergency placement off-duty status and reassigned him to a new location despite his thirty plus years of employment, consistent positive performance evaluations, and no prior formal discipline. Mr. McGaffney asserts that his emergency placement and relocation and being assigned to do craft work for four days was the result of age discrimination in violation of the ADEA. Mr. McGaffney asserts that USPS's actions were due to his age and were in retaliation for initiating EEO complaints.

Mr. Donahoe responds that Mr. McGaffney suffered no adverse employment action because he was not terminated or demoted. Mr. McGaffney retained his gainful employment with USPS, and during his pending investigation, he retained the same position title, pay, and grade. As such, the Court finds that he did not suffer an adverse employment action. Mr. Donahoe also explains that even if Mr. McGaffney could show that he suffered an adverse employment action, his case must be dismissed by summary judgment because he has not suffered any loss or damage for which a remedy is available under the ADEA. Mr. Donahoe asserts that there is no evidence of discriminatory intent, and USPS had legitimate, non-discriminatory reasons for its actions.

The issue of available remedies under the ADEA is dispositive in this matter. Mr. McGaffney asserted discrimination and retaliation claims solely under the ADEA. At the time Mr. McGaffney filed his Amended Complaint, he still was employed by USPS. USPS had not terminated or demoted Mr. McGaffney. In considering Mr. McGaffney's motion for leave to amend his complaint, the Court analyzed case law that held compensatory, liquidated, and punitive damages are not available against the federal government under the ADEA. The Court allowed Mr. McGaffney's Amended Complaint but noted that "Plaintiff's demand for a jury trial and liquidated, compensatory and punitive damages is stricken." (Filing No. 24 at 4.)

As Mr. Donahoe pointed out, the Seventh Circuit has held that "[t]he ADEA permits reinstatement, back pay, and other 'legal or equitable relief as may be appropriate,' 29 U.S.C. § 626(b), but not 'compensatory damages for pain and suffering or emotional distress.'" *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011) (quoting *Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995)). Further, "[n]either Title VII nor the ADEA authorizes awards of compensatory or punitive damages, as opposed to 'equitable' relief such as reinstatement and back pay." *Espinueva v. Garrett*, 895 F.2d 1164, 1165 (7th Cir. 1990).

While reinstatement and back pay are remedies under the ADEA, under the undisputed facts of this case, reinstatement and back pay are not available to Mr. McGaffney because he never was terminated, making reinstatement unnecessary, and he never was demoted or lost wages, making back pay unnecessary. While Mr. McGaffney asserts that he suffered humiliation and emotional distress because of his assignment to perform craft work for four days, no remedy for such injury is available under the ADEA. *Barton*, 662 F.3d at 454.

Anticipating an argument from Mr. McGaffney that he is entitled to back pay for one week's compensation because of the one week of unpaid, off-duty placement before starting his

11

assignment in Indianapolis, Mr. Donahoe explains that any such claim is not properly before the Court because Mr. McGaffney did not exhaust his administrative remedies for that claim through the EEO process. Mr. Donahoe points out that Mr. McGaffney was placed on unpaid emergency status and then one week later began his paid work assignment at the Indianapolis facility. On September 6, 2012, the same time he started his assignment at the Indianapolis facility, Mr. McGaffney initiated EEO counseling, and then he submitted an "Information for Pre-Complaint Counseling" on September 17. This was based on the claim that Mr. LeSage was discriminating against Mr. McGaffney based on his age by placing him on emergency off-duty status. However, Mr. McGaffney withdrew this claim in its entirety on September 30, 2012. By withdrawing his claim, Mr. McGaffney ended his pursuit of a claim based on the unpaid, emergency off-duty placement, and he failed to exhaust his administrative remedies. *See McGinty v. United States Dep't of Army*, 900 F.2d 1114, 1117–18 (7th Cir. 1990) ("administrative remedies, once initiated, must be exhausted before a suit may be filed"). Mr. Donahoe explains that, having failed to exhaust his administrative remedies, Mr. McGaffney cannot now assert a claim for damages based on the one week of unpaid, emergency off-duty placement in September 2012 because such a claim is time barred. *See* 29 C.F.R. § 1614.105(a)(1) (45-day window to initiate EEO process).

Mr. McGaffney failed to respond to Mr. Donahoe's argument that any claim for the one week of unpaid, emergency off-duty placement is not properly before the Court. Instead, Mr. McGaffney asserts that attorney's fees and costs are available remedies under the ADEA. However, the case law on which Mr. McGaffney relies affirms that in order to recover attorney's fees and costs, a party must first be a prevailing party on the underlying claim, in this case the ADEA claims. A claim for attorney's fees and costs cannot stand alone. *See, e.g.*, *McMahon v. Synthron, Inc.*, 2005 U.S. Dist. LEXIS 39681, *14 (W.D.N.C. Dec. 16, 2005) ("attorney's fees are

not an independent cause of action under federal or state law, [however a] plaintiff would be entitled to seek attorney fees if he is successful on his claim under the ADEA").

Mr. McGaffney also asserts that he has available remedies under the Civil Service Reform Act through the Merit System Protection Board, and thus, his claims under the ADEA should survive summary judgment. However, this argument also is unavailing. The Civil Service Reform Act is inapplicable in this case; Mr. McGaffney did not utilize the Merit System Protection Board process nor did he assert a Civil Service Reform Act claim in his Amended Complaint.

Mr. McGaffney is deemed to have conceded the issue of a lack of exhaustion of administrative remedies and a time bar for any claim of damages based on the one week of unpaid, emergency off-duty placement in September 2012 because he failed to respond to Mr. Donahoe's argument on this issue. Further, reinstatement and back pay are not available to Mr. McGaffney because he did not suffer any lost wages and he retained his employment with USPS. Attorney's fees and costs are not available to Mr. McGaffney because they cannot serve as a cause of action independent of the underlying ADEA claims. With no remedies available to him under the ADEA, Mr. McGaffney cannot proceed in this litigation[2].  The Court must therefore grant Defendants' motion for summary judgment on his ADEA claim for this reason as well.

---

[2] Having found that Mr. McGaffney suffered no adverse employment action and that he has no remedies available to him under the ADEA, the Court has ended its analysis here. Nevertheless, had the Court been required to conduct an analysis, it would find that Mr. McGaffney's claims fail under the direct method of proof because he cannot establish that his age or retaliation were the reasons he was disciplined, let alone the "but for" cause of the employer's "adverse" employment decisions. Under the indirect method, Mr. McGaffney concedes that he has no comparators as they are currently defined by law, but asserts that he was temporarily replaced "during his nine month exile" by an employee who was 12 years his junior (that would make her 54). While Mr. McGaffney's arguments are well-taken, the Court is not persuaded that a similarly situated employee not of the protected class was treated more favorably. Additionally, Mr. McGaffney's unsatisfactory job performance shows that the USPS had non-discriminatory reasons for its decision to issue the Letter of Warning to him and Mr. Gaffney has not shown that those reasons were pretext. At bottom, Mr. McGaffney has presented no direct or indirect evidence of discriminatory intent based on age discrimination or retaliation.

## IV.   CONCLUSION

Because the ADEA affords no remedies to Mr. McGaffney under the facts of this case, Mr. Donahoe's Motion for Summary Judgment (Filing No. 36) is **GRANTED**, and Mr. McGaffney's action is **DISMISSED**.  Additionally, the parties' Unopposed Motion for Continuance (Filing No. 46) is **DENIED** as moot.

**SO ORDERED.**

Date: 7/28/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Steven Sams
STEVEN SAMS, P.C.
stevensamslaw@att.net

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov